301 Ga. 281
FINAL COPY

S17A0357. THE STATE v. OGUNSUYI.

HINES, Chief Justice.

Olubumi Ogunsuyi was indicted for malice murder and related crimes in connection with the January 22, 2015 fatal shooting of Courtney Daniels, Sr.[1] This is an appeal by the State from an order of the Superior Court of Fulton County granting Ogunsuyi's pretrial motion for immunity from prosecution pursuant to  OCGA § 16-3-24.2 [2] based on her claim that the shooting was in self-defense.[3]  For the reasons that follow, we affirm.

---

[1] On June 9, 2015, a Fulton County grand jury returned an indictment against Ogunsuyi, charging her with malice murder; felony murder while in the commission of aggravated assault with a deadly weapon; felony murder while in the commission of possession of a firearm by a convicted felon; aggravated assault with a deadly weapon; possession of a firearm during the commission of a felony; possession of a firearm by a convicted felon; and commission of a crime by a convicted felon through the use of a firearm.

[2] OCGA § 16-3-24.2, effective July 1, 2014, provides that "[a] person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor" except in limited circumstances not applicable to this case.

[3] OCGA § 16-3-21 (a) provides:
   A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or

The superior court held a hearing on the pretrial motion for immunity, and at that hearing Ogunsuyi testified along with two investigating police officers and the firearms examiner and medical examiner in the case; also introduced into evidence were Ogunsuyi's videotaped statement to the police, surveillance video from the hotel where the shooting occurred, and photographs, inter alia, of the crime scene, the decedent, and Ogunsuyi following the incident. Approximately a month later, the superior court entered the order at issue granting Ogunsuyi's motion and directing that she was to be immune from further prosecution of any charges in the case.[4]

In its order, the superior court found the following circumstances. On the day of the shooting, Ogunsuyi, who was a prostitute, received a telephone call from Daniels, who had been a client and friend of hers; he told Ogunsuyi that he "wanted to come and take care of some business that [they] had to handle."

great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

[4] As outlined in footnote 1, Ogunsuyi was indicted not only for malice murder but also for related charges. The superior court found her immune from prosecution of all of the charges stemming from the shooting based upon its acceptance of her justification claim of self-defense. The State does not contend that the grant of immunity was incomplete or maintain that any of the charges are extant.

Daniels had paid for a study trip abroad for Ogunsuyi's son, the trip was cancelled, and Daniels was attempting to deposit a refund check; however, the check named the son as the payee, and Ogunsuyi and Daniels were having a disagreement about Daniels having difficulty depositing the check.

Daniels picked up Ogunsuyi to ride with him in his big-rig truck, which had two seats and a bed behind them. Ogunsuyi assumed that they were going to the bank to resolve the check issue, but Daniels drove elsewhere. He drove them around the Atlanta area for an extended period, during which Ogunsuyi told Daniels that she needed to return home; this apparently angered Daniels. Despite Ogunsuyi's insistence on being taken home, Daniels drove to several places and then to the CSX yard, where truck cargo was off-loaded onto trains. There Daniels handled paperwork and spoke with his manager while Ogunsuyi remained on the bed in the back of the truck. While at the CSX yard, Ogunsuyi tried to move to one of the truck's seats but Daniels "slammed [her] back down in the back of the truck," apparently because truck drivers were not supposed to have passengers. Ogunsuyi then repeatedly told Daniels to "get off of her." Daniels was a former United States Marine, was five-feet-seven-inches tall and weighed 260 pounds. Ogunsuyi did not try to run or notify anyone because she

3

had not previously experienced violent behavior from Daniels and did not then believe she was in serious danger.

Thereafter, Daniels drove Ogunsuyi to the hotel where she was living, and she asked him to let her out of the truck. Instead, Daniels resumed the discussion about the check, stating that Ogunsuyi needed to bring her son with them to the bank to accomplish the deposit; Ogunsuyi disagreed based upon calls she had made to the travel company concerning the issue. She again asked to be let out of the truck; she had never before exited the truck without Daniels's help because the door handle would stick when it was lifted up. When Ogunsuyi reached down to the floor to pick up her cell phone, Daniels "grabbed [her] and began choking her to the point she could not breathe." In response, Ogunsuyi shot Daniels,[5] then opened the truck door and immediately went to the hotel's reception desk. She told the employee that she needed to call the police; however, the employee indicated that Ogunsuyi would have to call from her room. Ogunsuyi went directly to her room, called the police, and then waited for them to arrive.

The superior court concluded that Ogunsuyi's testimony "substantially

---

[5] Ogunsuyi testified that she pulled the handgun from her purse.

4

align[ed]" with her previous statements to law enforcement; it found that her story was corroborated by statements from witnesses at the CSX yard and the hotel as well as the surveillance video from the hotel, and that her actions following the incident, particularly her immediately proceeding to report the incident and then waiting for emergency personnel to arrive, contributed to the court's reconstruction of the events leading to Daniels's death. Ultimately, the superior court concluded that Ogunsuyi's testimony was consistent and credible, and that she had met her burden of showing by a preponderance of the evidence that she acted in self-defense when she fatally shot Daniels.

The State's sole challenge is that the superior court committed reversible error when it "sought out and considered extraneous material" which it claims significantly contributed to the superior court's decision to grant the motion. Specifically, the State complains that the superior court's determination that Ogunsuyi was credible was based, in part, on a document which was filed of record but not admitted at the pretrial hearing. Specifically, the court's order repeatedly cites "doc. no. 17," a more-than-400-page discovery packet the State supplied to the defense on June 23, 2015.

A defendant bears the burden of demonstrating entitlement to immunity

from prosecution under OCGA § 16-3-24.2 by a preponderance of the evidence. *Anthony v. State*, 298 Ga. 827, 829 (2) (785 SE2d 277) (2016). On review of a trial court's ruling regarding a motion for pretrial immunity, this Court views the evidence in the light most favorable to the ruling, and "'accept[s] the trial court's findings of fact and credibility determinations if there is any evidence to support them.'" Id., quoting *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013). The State acknowledges the defendant's evidentiary burden and this Court's standard of review, and in fact, concedes that there is evidence of record from the motion hearing to support the superior court's determination. However, it urges that the superior court's consideration of doc. no. 17 was reversible error.

We agree that it was error for the superior court to cite the subject discovery disclosures by the State as support for its findings. But, that is not the end of our inquiry because in some circumstances such an error in taking judicial notice may be harmless. See, e.g., *Eubanks v. Rabon*, 281 Ga. 708, 711 (3) (642 SE2d 652) (2007) (considering harmless error in the context of judicial notice of an adjudicative fact); *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007) ("The test for determining non constitutional harmless error is

6

whether it is highly probable that the error did not contribute to the verdict.");

*Jones v. State*, 265 Ga. 84, 86 (453 SE2d 716) (1995) ("'A constitutional error

. . . will not require reversal if it can be shown to the court beyond a reasonable

doubt that the evidence did not contribute to the conviction.'") (quoting

*Chapman v. California*, 386 U. S. 18 (87 SCt 824, 17 LE2d 705) (1967)). Here

the parties have not characterized the error as constitutional or

nonconstitutional, and we need not do so because the superior court's

consideration of doc. no. 17 was harmless under either standard.

Doc. no. 17 contains the investigation report from the testifying officers,

including summaries of interviews with witnesses and with Ogunsuyi, matching

what is on the videotape of the interview that was admitted into evidence. The

transcript of the immunity hearing makes plain that the investigating officers

relied on this information when they testified, without objection by Ogunsuyi,

as to the witnesses' statements and other evidence obtained by police. See

OCGA § 24-8-802.[6] Thus, the State effectively relied upon, at least in part, the

---

[6] OCGA § 24-8-802 provides:
> Hearsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.

7

same evidence to which it now finds consideration by the superior court harmful.

Even though the superior court did cite doc. no. 17 numerous times in its order, it never did so in isolation but always in conjunction with specific citations to the transcript of testimony adduced at the motion hearing, and in fact, at the tail end of these other citations. Indeed, doc. no. 17 appears to have been referenced as merely a summary addition. Notably, although doc. no. 17 is more than 400 pages long, almost none of the superior court's citations to it contain specific page numbers. In many instances, it is unclear why the court cited the document as it did not contain any information not clearly conveyed in the hearing testimony or in the exhibits admitted into evidence. Notably, the superior court never cites to any of these exhibits, which included Ogunsuyi's videotaped statement to police, surveillance video of the hotel, and photographs; this indicates that the court may have used doc. no. 17, which included summaries of these videos and the photographs, as a shorthand to refer to these exhibits.

The State maintains that the superior court's error in considering doc. no. 17 was harmful because "[i]t affirmatively appears within the trial court's own

8

order that its conclusion that Ogunsuyi was credible was based on the trial court's decision to review extraneous material not properly before it as the trier of fact, and that its consideration of such material appears likely to have contributed to the decision."

The State argues that the corroboration evidence relied on by the superior court could have come only from information contained in doc. no. 17, not introduced at the motion hearing. That is simply not true. All of the information the court mentions as proving Ogunsuyi's credibility came most clearly from evidence at the hearing. To the extent this evidence was echoed by doc. no. 17, the document did not serve to clarify or further corroborate any material evidence.[7] There simply is no showing of harm.

As the State concedes, there was evidence introduced at the motion hearing to support the ruling in favor of Ogunsuyi. See *Anthony v. State*, supra

---

[7] Ogunsuyi appears to contend that the superior court took "judicial cognizance" of doc. no. 17. Prior to the adoption of Georgia's new Evidence Code, judicial cognizance was recognized as a subset of judicial notice. Judicial notice of adjudicative facts is the process by which a court recognizes as conclusive certain facts absent formal proof. See *Eubanks v. Rabon*, supra; *Graves v. State*, 269 Ga. 772, 772 (2) (504 SE2d 679) (1998) (overruled on other grounds by *Jones v. State*, 272 Ga. 900 (537 SE2d 80) (2000)); see also OCGA § 24-2-201. Here, the superior court cited doc. no. 17 as support of its own determination of the facts. The court did not indicate that it had taken "judicial notice" of the document and there is not indication that the court accepted as conclusive any fact in the document.

at 829 (2).  Consequently, the State fails to provide a meritorious basis for reversal of the superior court's grant of Ogunsuyi's motion for immunity from prosecution.

Judgment affirmed.  All the Justices concur.

Decided May 30, 2017.

Murder, etc. Fulton Superior Court. Before Judge Glanville.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Richard W. Marks, Jessica A. Seares, for appellee.