**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 14, 2018**

# In the Court of Appeals of Georgia

A18A0956. THE STATE v. SMITH.

DILLARD, Chief Judge.

Diante Jermaine Smith was indicted on charges of aggravated assault and reckless conduct. Smith filed a motion to dismiss the charges on grounds of immunity from prosecution, which the trial court granted following a hearing. The State appeals from the dismissal, arguing that the trial court erred by (1) hearing Smith's motion after the start of trial and (2) granting the motion when there was no evidence that Smith defended himself within the meaning of OCGA § 16-3-21. For the reasons set forth *infra*, we affirm.

Viewing the record in the light most favorable to the trial court's ruling,[1] the evidence shows that, on the day in question, Smith returned to ex-girlfriend Rashell Merrell's family home. Rashell had given Smith permission to come by the house to pick up some of his belongings while her family was away.[2] Upon his arrival, Smith parked his vehicle on the street, to one side of the driveway's entrance.

Smith had been at the home for approximately twenty minutes when he heard the family's distinctively loud utility van nearing the residence, and he immediately exited the house and started walking toward his vehicle. The van approached the home as Smith neared his vehicle, and one of Rashell's four brothers, Dillon Merrell, exited the van and ran toward Smith, who in turn sprinted the remaining distance to

---

[1] *See, e.g.*, *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013) ("In reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them."); *State v. Hall*, 339 Ga. App. 237, 238 (793 SE2d 522) (2016) ("On appeal from the trial court's grant or denial of immunity under OCGA § 16-3-24.2, we view the evidence in the light most favorable to the trial court's ruling.").

[2] Smith had recently been instructed by Rashell's parents to never return to the home.

his car.[3] But Smith reached his vehicle first, got inside, and locked the doors. The two men had a strained history.

During his time with the Merrell family, Smith had been employed by the father, and he had witnessed Dillon shove his father in extreme anger over work-related disagreements. Dillon had also previously shoved Smith in an incident years earlier. Additionally, Smith was aware that Dillon had a reputation for being "[v]ery aggressive, angry, [and] crazy." And as a result of this knowledge and these prior altercations, Smith felt "[v]ery unsafe" by Dillon's approach, feared that the situation "was going to get ugly[,]" and intended to leave.

But after Smith entered and locked his vehicle, Dillon planted himself directly in front of the hood of the car. Smith tried to wave Dillon off, telling him that he wished to leave, but Dillon refused to move and remained in front of the car. According to Smith, Dillon appeared to be "hostile[,]" "tensed up," "extremely angry," and "puffed up," and he was certain that Dillon would attack him if he exited the vehicle. Meanwhile, according to Rashell, another one of her brothers—with

---

[3] The family van was parked on the same side of the street as Smith's vehicle, separated only by the driveway.

whom Smith also had a previous physical altercation—was standing nearby in the yard.

Smith started his vehicle and Dillon then jumped on top of its hood, grabbing hold of the space between the hood and windshield. At this point, Smith put the car into gear, but Dillon still did not get off the vehicle, so Smith proceeded to accelerate. Smith then left the subdivision by way of the exit known to him, driving up the street in a linear path. In doing so, Smith made only a few necessary turns until he reached the end of the subdivision, where he stopped the vehicle. Dillon then dismounted from the hood and angrily punched the driver's side window before Smith drove away.

Smith was subsequently indicted on charges of aggravated assault and reckless conduct. Then, on October 23, 2017, Smith filed a motion to dismiss the indictment, contending that he was immune from prosecution and entitled to the defense of justification under OCGA §§ 16-3-24.4 and 16-3-21. Following a hearing, the trial court granted Smith's motion on October 27, 2017, dismissing the indictment with prejudice. This appeal by the State follows.

1. We first address the State's argument that the trial court erred in hearing and ruling upon Smith's motion to dismiss after a jury was struck and, thus, after the beginning of trial.[4] We disagree.

OCGA § 16-3-24.2 provides, in relevant part, that "[a] person who uses threats or force in accordance with [OCGA §] 16-3-21 . . . shall be immune from criminal prosecution therefor . . . ." And in *Fair v. State*,[5] the Supreme Court of Georgia determined that this Court had correctly construed and applied OCGA § 16-3-24.2

---

[4] Under OCGA § 5-7-1, the State may appeal from a trial court's dismissal of "any count" of an indictment, which includes dismissals after a trial court concludes that an accused is immune from prosecution on the grounds of self-defense. *See State v. Yapo*, 296 Ga. App. 158, 158-59 (1) (674 SE2d 44) (2009) (holding that State had a right to appeal the trial court's finding that defendant was immune from prosecution on grounds of self-defense because trial court's ruling was effectively a dismissal of the battery counts); *see also* OCGA § 5-7-1 (a) (1) ("An appeal may be taken by and on behalf of the State of Georgia from the superior courts, state courts, and juvenile courts and such other courts from which a direct appeal is authorized to the Court of Appeals or the Supreme Court in criminal cases and adjudication of delinquency cases in the following instances: . . . From an order, decision, or judgment setting aside or dismissing any indictment, accusation, or a petition alleging that a child has committed a delinquent act, or any count thereof[.]").

[5] 284 Ga. 165 (664 SE2d 227) (2008).

in a previous decision,[6] concluding that a trial court must rule *pre-trial* on a defendant's motion that asserts entitlement to immunity.[7]

Here, in granting Smith's motion, the trial court explained that the motion had been filed "just prior to the jury being struck" on the first day of trial, and that the hearing on the motion was conducted the following day, October 24, 2017, "after the jury was struck due to the State's witness, observer Rashell Lee Merrell ('Merrell'),

---

[6] *Id.* at 166 (1) (citing and discussing with approval the construction and application of OCGA § 16-3-24.2 in *Boggs v. State*, 261 Ga. App. 104, 106 (581 SE2d 722) (2003)).

[7] *Id.* ("Because we are of the opinion that the Court of Appeals correctly construed and applied OCGA § 16-3-24.2 in *Boggs*, we hold that the trial court erred in refusing to rule pre-trial on the defendants' motions, and we therefore remand for a pre-trial determination of whether the defendants are entitled to immunity from prosecution under OCGA § 16-3-24.2."); *see also Boggs v. State*, 261 Ga. App. 104, 106 (581 SE2d 722) (2003) ("According to Black's Law Dictionary, one who is immune is exempt or free from duty or penalty, and prosecution is defined as 'a criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime.' Therefore, by the plain meaning of these terms and the other language in the statute, the statute must be construed to bar criminal proceedings against persons who use force under the circumstances set forth in OCGA § 16-3-23 or § 16-3-24. Further, as the statute provides that such person 'shall be immune from criminal prosecution,' the decision as to whether a person is immune under OCGA § 16-3-24.2 must be determined by the trial court before the trial of that person commences." (punctuation omitted)).

not being available before the jury was struck." The court went on to note that "Merrell and Smith testified" and that "[n]o physical evidence was tendered by either party during this hearing."

The State concedes on appeal that it did not object to this procedure in the trial court and that, therefore, this enumeration of error has been waived. Nevertheless, the State urges us to reverse by finding plain error.[8] And in order to demonstrate plain error, each of the following four prongs must exist:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[9]

---

[8] *See* OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

[9] *State v. Nicholson*, 321 Ga. App. 314, 317 (1) (739 SE2d 145) (2013) (quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011)).

In this case, assuming without deciding that the State satisfies the first two prongs, it cannot demonstrate the third prong—*i.e.*, that its substantial rights were affected. Indeed, as the trial court explained in its order, the hearing was conducted "after the jury was struck due to the *State's witness . . .* not being available before the jury was struck."[10] If anything, the State benefitted from the case proceeding as it did, and it cannot now complain about the timing of the hearing on Smith's motion, which was filed before the jury was struck. Accordingly, this enumeration of error is without merit.

2. Next, the State argues that the trial court erred in granting the motion when there was no evidence Smith defended himself by using threats or force within the meaning of OCGA § 16-3-21. Again, we disagree.

As explained *supra*, OCGA § 16-3-24.2 provides that "[a] person who uses threats or force in accordance with [OCGA §] 16-3-21 . . . shall be immune from criminal prosecution therefor . . . ." And it is well established that a defendant "bears the burden of demonstrating entitlement to immunity from prosecution under OCGA

---

[10] (Emphasis supplied.)

8

§ 16-3-24.2 by a preponderance of the evidence."[11] Finally, when we review a trial court's ruling on such a motion, we must view the evidence in the light most favorable to the ruling, and the trial court's findings of fact and credibility determinations must be accepted if there is any evidence to support them.[12] With these guiding principles in mind, we will now consider the State's argument.

Here, Smith claimed that he used threats or force in accordance with OCGA § 16-3-21, and the trial court agreed. OCGA § 16-3-21 provides, in relevant part, that

> [a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in [OCGA §] 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.[13]

---

[11] *State v. Ogunsuyi*, 301 Ga. 281, 283 (800 SE2d 542) (2017); *accord Anthony v. State*, 298 Ga. 827, 829 (2) (785 SE2d 277) (2016).

[12] *Ogunsuyi*, 301 Ga. at 283; *Anthony*, 298 Ga. at 829 (2).

[13] OCGA § 16-3-21 (a).

9

The State maintains that Smith failed to meet his burden of proof because he "never testified that he had used any force against Dillon," apparently taking issue with Smith's testimony that he did not wish Dillon harm and only wanted to leave, and with the testimony regarding (and the trial court's finding) that Smith drove the vehicle after Dillon jumped on it and did so at a normal, safe speed. Likewise, the State also contends there was no evidence to support a finding that any use of force by Smith was necessary to defend himself.

Contrary to the State's assertions on appeal, there is ample evidence to support the trial court's conclusions. After hearing the testimony presented by Smith and Rashell, the trial court accepted Smith's description of the encounter (as detailed *supra*) over that provided by Rashell, who testified that Dillon did not have time to move out of the vehicle's path. Rashell also testified that she was "not saying [Smith] hit Dillon" but that when Smith's car "took off, Dillon ended up on the car because he didn't have time to move to either side" and thus "fell over the car[.]" She explicitly denied that Smith "drove into him and was like trying to kill him or anything," and also denied that Smith swerved the vehicle as he drove off with Dillon on top, testifying that she only saw the vehicle drive straight.

10

The trial court concluded that Dillon jumped onto the hood of the vehicle after Smith started it (but prior to acceleration), and discounted Rashell's testimony to the contrary, determining that her contention that "Dillon had nowhere to go and did not have time to move [was] not borne out by the evidence." Then, based upon both Smith *and* Rashell's testimony, the court concluded that Smith drove at a normal, safe speed; that he did not swerve; and that there was no danger of Dillon being thrown from the hood. Accordingly, the court also determined there was no evidence the vehicle was used in a way likely to cause death or great bodily harm.[14] Instead, the court found that Dillon was and remained the initial aggressor and that Smith used his vehicle to protect himself in the manner that he reasonably believed necessary.[15]

[14] *See Payne v. State*, 195 Ga. App. 523, 525 (4) (394 SE2d 781) (1990) ("An automobile is not per se a deadly weapon, but may become one depending upon the manner and means of the vehicle's use." (punctuation omitted)); *Myers v. State*, 311 Ga. App. 668, 670 & n.11 (2) (716 SE2d 772) (2011) (same); *see also White v. State*, 287 Ga. 713, 724 n.7 (4) (c) (699 SE2d 291) (2010) (noting that "[w]hen the weapons involved are not deadly weapons *per se*, whether the weapons used by the combatants constitute deadly weapons is for the jury to determine" and citing to *Simmons v. State*, 172 Ga. App. 695, 696 (1) (324 SE2d 546) (1984), for the proposition that, "depending on the manner and means of the use of a motor vehicle, jury could decide it was a deadly weapon").

[15] The trial court also noted that "a different picture of the altercation might have emerged if Dillon or [the other brother], both listed on the State's trial witness list, had testified." (Footnote omitted). But those witnesses were not called by the State to testify at the hearing, and the court recognized that it was "confined to the

And because there is evidence to support the trial court's conclusions, we affirm.[16]

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

evidence as presented."

[16] *See State v. Green*, 289 Ga. 802, 804 (1) (716 SE2d 194) (2011) (affirming trial court's finding that criminal defendant was immune from prosecution on grounds of justification when evidence supported trial court's finding that criminal defendant "held onto [a] knife for 'protection' and to 'scare'" his attacker, the victim, and that criminal defendant "was, at the very least, showing a threat of force to [the victim] in direct response to an imminent violent attack" from the victim); *State v. Cooper*, 324 Ga. App. 32, 33-34 (1) (749 SE2d 35) (2013) (affirming trial court's finding that criminal defendants were immune from prosecution on grounds of justification when uncontroverted evidence supported trial court's finding that criminal defendants "reasonably believed that there was a danger of imminent death or great bodily injury to one or more of their group and that the force they used was necessary to defend themselves from a violent attack"). *Cf. Nelson v. State*, 283 Ga. 119, 120 (1) (657 SE2d 201) (2008) (holding that "jury was authorized to conclude that appellant used excessive force when he shot the victim in response to the victim having punched him"); *In the Interest of Q. M. L.*, 257 Ga. App. 22, 23-24 (2) (570 SE2d 92) (2002) (affirming trial court's finding that juvenile used excessive force by stabbing unarmed victim, attempting to continue to stab victim, and yelling that she wished to kill victim, and, thus, that juvenile was not entitled to defense of justification).