**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2023**

# In the Court of Appeals of Georgia

A23A0309. THE STATE v. LARSCHEID.

LAND, Judge.

In 2019, a Dekalb County grand jury indicted Phillip Larscheid, a patrol officer with the Dekalb County Police Department, for aggravated assault and violation of oath by a public officer in connection with the 2017 arrest of Katie McCrary. Larscheid contended his actions were justified and sought immunity from prosecution under OCGA § 16-3-24.2. After a hearing, the trial court granted Larscheid's motion and dismissed both counts of the indictment. The State appeals, arguing that the trial court did not properly apply the Georgia Supreme Court's opinion in *State v. Copeland*, 310 Ga. 345 (850 SE2d 736) (2020). We disagree and affirm.

On appeal from an immunity order under OCGA § 16-3-24.2, "we review the evidence in the light most favorable to the trial court's ruling, and we generally

accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them." (Citation and punctuation omitted.) *Copeland*, 310 Ga. at 346 (1). However, where there is a videotape of the incident in question, this Court "owes no deference to a trial court's factual findings gleaned from a review of [the] videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence." (Citation and punctuation omitted.) Id. A trial court's legal application of OCGA § 16-3-24.2 is reviewed de novo. Id. at 346 (1).

So viewed, the record shows that on June 4, 2017, Larscheid received a call regarding a woman loitering at a gas station/convenience store. Before Larscheid arrived, he received information that the store clerk had locked the woman inside the store, leading him to suspect that a crime had been committed.

Larscheid arrived at the scene in a marked Dekalb County police car while wearing his police uniform. The clerk unlocked the door from behind the counter, and Larscheid entered. The clerk pointed at McCrary several times. McCrary attempted to leave the store through the front door and told Larscheid that the person he was looking for was "over there." When Larscheid attempted to speak to the clerk to assess the situation, he could not understand her over McCrary's yelling. Larscheid

believed McCrary was the subject of the call and that she had committed the crime of misdemeanor obstruction by her interference with his investigation. Accordingly, he instructed her to stay inside the store and gestured for her to step away from the door. McCrary told Larscheid she was a federal agent and recited a badge number. Larscheid told McCrary that it was a crime to impersonate a law enforcement officer, and she stated that he was the one who was impersonating an officer.

The store's surveillance video[1] does not show Larscheid's entry into the store or his initial encounter with McCrary. That video begins with Larscheid standing between the front door and a visibly agitated McCrary who is gesturing toward the clerk and Larscheid. The video shows that Larscheid used his arm to gesture McCrary away from the front door and placed his hand on McCrary's arm to move her in that direction. In response, McCrary slapped Larscheid's hand. Larscheid unsuccessfully attempted to secure her hands. He attempted to call for backup but got no response. At this point, Larscheid concluded that the situation had escalated to a "third tier" encounter, meaning that there was probable cause to arrest her for obstruction. *Copeland*, 310 Ga. at 351 (2) (b).

---

[1] This video has no sound and depicts the area near the front door, as well as the clerk's station behind a plexiglass barrier.

As the situation escalated, McCrary reached toward Larscheid's chest and grabbed the front of his vest. Larscheid concluded that these actions constituted unlawful force by McCrary, that more unlawful force was imminent, and that she had committed felony obstruction. He attempted to place McCrary under arrest, but the situation worsened as McCrary attempted to push her way past Larscheid and toward the front door, grabbing a bystander in the process. At this point, Larscheid removed his expandable ASP baton from his belt and began to strike McCrary with it. Larscheid testified that he also gave McCrary verbal commands to put her hands behind her back and to lie on the ground. She did not comply.

McCrary fell to the ground after several strikes to her arms and legs but continued to resist. Larscheid stopped striking McCrary and again attempted to radio for backup, but McCrary reached up, grabbed Larscheid and his radio, and pulled him off balance toward the ground. Larscheid struck McCrary's arms and legs with the baton several more times.

During this encounter, a bystander began filming the scene with a cell phone.[2] An unidentified voice can be heard on this video repeatedly telling McCrary to "stop

___

[2] The cell phone video contains sound and depicts the area near the front door, as well as the clerk's station. However, as with the other video, it does not show Larscheid's initial interaction with McCrary.

resisting," and Larscheid can be heard telling McCrary to get on her stomach. McCrary did not comply and instead yelled at Larscheid to stop as she rolled onto her side and kicked and grabbed at the officer. Larscheid struck her several more times with the baton as bystanders told her to stop resisting.

Larscheid eventually forced McCrary onto her stomach and used his body weight to control her. Undeterred, McCrary grabbed Larscheid's baton. Larscheid attempted to pull the baton away from her and warned her to "let it go or I'll shoot you." McCrary let go of the baton, and Larscheid told her to put her hands behind her back. McCrary did not comply, choosing instead to place her hand flat against the floor and her foot against the instep of Larscheid's foot while pushing back against him. Believing this resistance was unlawful, Larscheid struck McCrary one last time on her forearm with the baton. McCrary then retracted her foot and rolled onto her stomach. McCrary was arrested and charged with felony obstruction of an officer.

Larscheid administered a total of 30 strikes with the baton. The parties do not dispute that all of the strikes were made to McCrary's arms and legs, which experts for both parties testified were appropriate "target" areas for baton strikes. The entire interaction lasted less than three minutes, and the video evidence shows that McCrary remained combative and resistant the entire time until she was placed in handcuffs.

During the immunity hearing, the trial judge heard from several witnesses. Dekalb Police Lieutenant J.D. Sawyer and Dekalb Police Sergeant Tracey Rucker both testified that Larscheid's use of force was consistent with the training he had received, that his actions were defensive in response to McCrary's unlawful use of force, and that his actions violated no police policies or state law. GBI Agent Steven McCallum investigated the matter and testified that Larscheid's actions were defensive in response to McCrary's unlawful use of force and that he found no probable cause that Larscheid had committed aggravated assault or that he had committed a violation of his oath of office. Similarly, Glyn Corbitt, a "Use of Force instructor" at the Georgia Public Safety Training Center, testified that Larscheid's use of force complied with Georgia law, Dekalb Police policy, and prevailing law enforcement standards. Corbitt also testified that McCrary used unlawful force against Larscheid. In response to this evidence, the State relied on the testimony of James Klauba, a former police officer from Chicago who opined that 28 of Larscheid's 30 baton strikes were reasonable while two were not.

McCrary suffered a laceration to her left leg and bruises to her arms and hands but did not suffer any fractures, did not require surgery, and was not hospitalized for her injuries. Larscheid called EMS as required by Dekalb Police policies and

procedures, but McCrary refused treatment. Larscheid then took McCrary to the jail and then the hospital for evaluation. After being evaluated at the hospital, she was released back to the jail.

Larscheid was indicted on one count each of aggravated assault and violation of oath by a public officer. He filed a motion for immunity from prosecution under OCGA § 16-3-24.2. After hearing the evidence and assessing the witnesses' credibility, the trial court granted Larscheid's motion and dismissed both counts of the indictment.

The State appeals, arguing that the trial court erred in granting immunity to Larscheid. Specifically, the State argues that the trial court misapplied our Supreme Court's opinion in *Copeland*, 310 Ga. at 345, because it did not analyze the reasonableness of Larscheid's belief regarding the severity of McCrary's force or the degree of force Larscheid needed to reasonably defend against McCrary. We are unpersuaded.

*The Immunity Statute.* Georgia law provides that "a person who uses threats or force in accordance with [certain statutes, including OCGA § 16-3-21] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such

person . . . ." OCGA § 16-3-24.2. Relevant to Larscheid's motion here, "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's *imminent use of unlawful force*[.]" (Emphasis supplied.) OCGA § 16-3-21 (a).

"Law enforcement officers may seek immunity from prosecution under OCGA § 16-3-24.2 when they are indicted based on their threats or use of force" and "their evidentiary burden is identical to that of any other defendant." *Copeland*, 310 Ga. at 350 (2) (a). Whether an officer used reasonable force in effectuating a lawful detention or arrest is an inquiry separate from whether the use of force was in defense of himself or others under OCGA § 16-3-21 (a) such that an officer is entitled to immunity under OCGA § 16-3-24.2. *Copeland*, 310 Ga. at 356 (2) (a) (iii).

> When the person claiming immunity uses force *intended or likely to cause death or great bodily harm*, that person must also prove by a preponderance of the evidence that such potentially lethal force was based on a reasonable belief that the force was necessary to prevent death or great bodily injury at the hands of the alleged victim *or to prevent the commission of a forcible felony.*

(Emphasis supplied.) *Copeland*, 310 Ga. at 350 (2) (a).

8

Thus, in considering Larscheid's motion for immunity, the trial court was required to consider whether McCrary's conduct constituted an imminent use of unlawful force and whether Larscheid's use of the ASP baton against McCrary was based on a reasonable belief that this force was necessary to defend himself or a third person against McCrary's imminent use of unlawful force. See *Copeland*, 310 Ga. at 355 (2) (b) (iii-iv). To the extent Larscheid's use of the ASP baton "was intended or likely to cause death or great bodily harm[,]" the trial court was also required to consider whether Larscheid's use of the ASP baton was "based on his own reasonable belief that [McCrary] was threatening imminent use of unlawful force intended or likely to cause death or great bodily injury to [Larscheid] or a third person or whether [McCrary] was threatening a forcible felony." *Copeland*, 310 Ga. at 356 (2) (c) (iv).

*McCrary's Unlawful Force.* We first consider whether McCrary's conduct constituted the imminent use of unlawful force. Because Larscheid encountered McCrary in his capacity as a law enforcement officer, it is "also relevant for the trial court to consider the legal classification" of his encounter with McCrary. *Copeland*, 310 Ga. at 351 (2) (b).

9

"There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause." (Citation and punctuation omitted.) *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 546) (2012). In a first-tier encounter, "an officer may not use force . . . [and] has no authority to detain or restrict the liberty of a citizen, and the citizen has the right to withdraw from the encounter or resist any such use of force with a proportionate use of force." *Copeland*, 310 Ga. at 351 (2) (b). "[I]n a second-tier encounter, officers are authorized to briefly detain the suspect, and the suspect's physical resistance to that detention is unlawful." Id. at 354 (2) (c) (ii). An "officer may also take reasonable steps to protect his safety and the safety of others while detaining the individual." Id. at 352 (2) (b). "In a third-tier encounter, when an officer has probable cause to believe that an individual is committing or has committed a crime, the officer is authorized to make an arrest and take the individual into custody." (Punctuation omitted.) Id. At this stage, a person "is not free to flee or resist the arrest." Id.

In its order granting immunity, the trial court concluded that the encounter between McCrary and Larscheid escalated to a third-tier encounter when McCrary

10

attempted to mislead Larscheid in his investigation, falsely identified herself as a federal law enforcement officer, struck his hand, and grabbed Larscheid's vest as he attempted to call for back up.[3] Thus, the trial court determined that McCrary did not have the legal right to resist Larscheid's attempts to place her under arrest and that her resistance throughout the encounter was "unlawful" under OCGA § 16-3-21 (a). Because there is evidence in the record supporting the trial court's factual findings and credibility determinations on this issue, we must accept them. See *State v. Jenkins*, 355 Ga. App. 39, 45 (1) (840 SE2d 742) (2020) (affirming the trial court's grant of pretrial immunity from prosecution because the evidence in the record supported the trial court's finding that defendant was justified in his belief that force was necessary to defend against the victim's use of force).

*Larscheid's Beliefs Regarding McCrary's Use of Force.* The State argues that the trial court did not consider whether Larscheid's claimed beliefs regarding the severity of the force being used by McCrary were reasonable. On the contrary, the trial court considered the evidence presented at the hearing on the immunity motion, including the video evidence and testimony by Larscheid, McCrary, and others. This

---

[3] The State concedes that Larscheid's encounter with McCrary was at least a second-tier encounter and that Larscheid was authorized to instruct McCrary to stay inside the store as part of his investigation.

evidence supports the court's finding that Larscheid reasonably believed force was necessary to defend himself against McCrary's unlawful imminent force. Larscheid's description of the incident was consistent with the video evidence. As the trial court noted, Larscheid's perception of McCrary's unlawful force against him could not be discerned by merely watching the videos, but his testimony on this subject filled that gap and provided the court with credible evidence to sustain its findings. The trial court specifically found that Larscheid was credible and that McCrary was not, noting that her version of the incident was directly contradicted by the video evidence. We defer to the trial court's credibility findings, as we are required to on this appeal. See *Jenkins*, 355 Ga. App. at 45 (1).

*Larscheid's Use of Force against McCrary.* The State argues that the trial court did not analyze the degree of force that Larscheid needed to defend against McCrary's unlawful force, that Larscheid's force was excessive, and that as a result, he was not entitled to immunity. We disagree.

The immunity statute requires the trial court to consider the degree of force Larscheid needed to defend against McCrary's unlawful use of force. See *Copeland*, 310 Ga. at 356 (2) (c) (iv). To the extent that Larscheid's use of force against McCrary with the baton was intended or likely to cause death or great bodily harm,

12

the trial court was required to consider whether Larscheid reasonably believed that McCrary's threatened imminent unlawful force was intended to or likely to cause death or great bodily injury *or* that McCrary was threatening a forcible felony. See id. Although expert witnesses testified that officers are trained not to use an ASP baton as a deadly weapon, "that does not answer the question of whether, within the meaning of OCGA § 16-3-21 (a), [that device] could ever be used to inflict deadly force or whether they were intended or likely to do so in this case." *Copeland*, 310 Ga. at 357 (2) (c) (iv) (noting that a TASER can be considered a deadly weapon in certain circumstances). Instead, whether the use of such a device, like the ASP baton here, is of a type that is intended or likely to cause death "is a case-by-base determination that must account for how the device is used, how many times and for what duration, and under what circumstances" Id. See also *State v. Smith*, 347 Ga. App. 289, 293-294 (3) n. 14 (819 SE2d 87) (2018) (although a vehicle could become a deadly weapon depending upon the manner and means of its use, there was no evidence that vehicle was used in a way likely to cause death or great bodily harm).

Contrary to the State's argument, the trial court's findings of fact detailed the encounter between Larscheid and McCrary, including the circumstances leading to Larscheid's use of the baton, a description of how Larscheid appropriately "targeted"

his strikes on McCrary's arms and legs, the number of times he used his baton, and the duration of the incident, including the "several pauses" in Larscheid's use of force where he gave McCrary commands to stop resisting. The trial court also considered that, unlike in *Copeland*, McCrary sustained only superficial injuries and there was no evidence that McCrary had suffered a serious bodily injury or death. Based on this evidence, the trial court determined there was no evidence that Larscheid used the ASP baton in a way likely to cause death or great bodily harm. Because the evidence supported this finding, Larscheid was not required to show that he reasonably believed that McCrary's use of force against him was intended or likely to cause death or great bodily harm. See *Copeland*, 310 Ga. at 356 (2) (c) (iv).

Furthermore, the evidence in the record supports the trial court's alternative finding that Larscheid's use of force was justified because McCrary had engaged in a forcible felony (specifically, felony obstruction under OCGA § 16-10-24 (b)), when she grabbed the front of Larscheid's vest. See OCGA § 16-3-21 (a) ("a person is justified in using force which is intended or likely to cause death or great bodily harm . . . to prevent the commission of a forcible felony"). For these reasons, when construed in a light most favorable to the trial court's ruling, the evidence was sufficient for the trial court to determine that Larscheid met his burden of proving that

14

he was entitled to immunity from prosecution pursuant to OCGA § 16-3-24.2. *Jenkins*, 355 Ga. App. at 45.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*