In the Supreme Court of Georgia


Decided:   September 12, 2016


S16A0986.  THE STATE v. HAMILTON.


NAHMIAS, Justice.

At a trial in March 2011, the jury found Marlina Hamilton guilty of felony murder and other crimes in connection with the shooting death of her ex-husband, Christopher Donaldson.  In September 2015, the trial court granted Hamilton's motion for new trial on the general and other grounds.  The State appeals from that decision, but we affirm it.

1.    The evidence presented at trial showed the following. Hamilton and Donaldson began their relationship in 2000.  In 2001, they moved into an apartment together and had a son; D'Angelo, Hamilton's son from a previous relationship, also lived with them.  At trial, several witnesses, including Hamilton, testified that Donaldson physically abused her on multiple occasions over the years.  In early 2001, Donaldson accused Hamilton of cheating on him and "beat her."  That summer, he "jumped" on Hamilton because he blamed her

for their home being burglarized. On another occasion, Hamilton and Donaldson got into an argument and he "beat [her] down and hit [her] with a broom in [her] stomach." Hamilton's friend Angela Whitaker testified that during this period she saw bruises on Hamilton's arms and legs several times and that Hamilton told her on a few different occasions that she fought with Donaldson. After one of these fights, Whitaker had to take a piece of glass out of Hamilton's back.

In 2004, Hamilton became pregnant with twins. When she informed Donaldson, he punched her in the mouth and told her he did not want her to keep the babies. For the next two weeks, the couple fought constantly until Hamilton agreed to have an abortion. After the abortion, Hamilton moved in with her mother for a year, but in 2005, the couple got back together. That same year, Donaldson was arrested for drug crimes. After his attorney suggested that he would get a lighter sentence if the couple were married, Donaldson and Hamilton got married in January 2006, two days before he was sentenced. In March 2006, after discovering that Donaldson was cheating on her, Hamilton filed for divorce; the divorce was finalized in 2008.

Donaldson was released from prison in March 2010, and three months

later he asked Hamilton to get back together. When Hamilton denied his request, he punched her several times and raped her in her home. As a result, she became pregnant. A friend arranged for her to have an abortion, and Donaldson accompanied her to the procedure. In July, Hamilton went to Donaldson's home to get a grill. He told her that he had driven by her house the previous night and noticed that her car was missing, and he questioned her about being with another man. Hamilton tried to leave, but Donaldson grabbed her and tried to choke her; she fought back and scratched his neck. In August, Donaldson became angry about Hamilton's relationship with another man, and he hit her on the side of her face and punched her in her side in front of her children.

On September 7, Hamilton found her car tires slashed. Later that month, she noticed that her car smelled of gasoline and saw burned matches on her car. The same day, she found vulgar words spray painted on the side of her house. Hamilton called the police and informed them that she believed the person responsible was her current boyfriend's ex-girlfriend. On October 7, Donaldson told Hamilton that he had been going through her mail for a week and found a letter from her previous boyfriend that made him "genuinely mad." He

proceeded to "jump" on Hamilton. She tried to run down the stairs, but he grabbed her, pulled her back, and choked her. He then asked for another chance at their relationship, to which Hamilton responded, "if you will just stop this, I will do it." On October 10, Donaldson began moving into Hamilton's house in Albany.

In her testimony at trial, Hamilton recounted the events of October 11-12, 2010, as follows. Early in the evening, Donaldson and Hamilton were talking in the den when he became angry and started pacing back and forth, punching his fists and threatening Hamilton, saying, "I am going to show you I ain't no joke." Hamilton went to the bathroom and sent a text message to her friend, Brandi Jackson, asking her to call the police. The police responded to Hamilton's house around 11 p.m.; they gave her information on assistance regarding domestic violence and ordered Donaldson to leave the residence. After leaving, Donaldson called Hamilton eight times over a three to four minute period. Hamilton ignored all but one call, which she answered and told Donaldson to "stop calling [her]."

Donaldson soon returned to the house. After a conversation with Hamilton through a window, he let himself inside, and he and Hamilton began

4

talking in the den.[1]  Initially, Donaldson spoke calmly, apologizing to Hamilton and asking her to "give him another chance."  After she rejected his request and asked him to leave, Donaldson began pacing back and forth, saying to himself, "people think I'm stupid, but I am going to show them."  Donaldson then hit Hamilton in the back of her head.  When he swung toward her again, Hamilton grabbed a gun that she had under the sofa and shot Donaldson twice in the lower body.[2]  Donaldson then began beating and choking Hamilton as they wrestled for control of the gun.  He pointed the gun at her, but she was able to remove the magazine.  He then hit her in the head with the gun and punched her. Meanwhile, her son D'Angelo, who was awoken by the sound of gun shots, called the police.

D'Angelo then entered the den and pulled Donaldson off Hamilton, who

---

[1]  Several witnesses testified that the front door of the house had a faulty lock and could be opened without a key by "jiggling" it in a certain fashion.

[2]  Hamilton had borrowed the gun from her friend Jackson on October 8, and she kept it under the sofa in the den, which is where she had been sleeping.  In her police interview on the night of the shooting, Hamilton said she had wanted a gun to "scare" Donaldson.  She went on to explain, "I don't want him to keep jumping on me.  I don't [want] him around.  To hurt him.  I ain't trying to kill him."  At trial, Hamilton said that she had wanted a gun because she was afraid of the recent vandalization of her property and of Donaldson.

went to the kitchen to get a knife.[3]  Shortly thereafter, the police arrived.

Hamilton dropped the knife and went to the porch, which is where the police

found her.  Donaldson was taken to the hospital, but he soon died.  The medical

examiner testified that one bullet entered Donaldson's abdomen at a 45 to 60

degree downward trajectory, and the other bullet entered his right thigh at a 45

to 60 degree upward trajectory.  Hamilton told the police that she shot

Donaldson because she "felt like he was going to kill [her] that night."

On February 23, 2011, a Dougherty County grand jury indicted Hamilton

for malice murder, felony murder based on aggravated assault with a deadly

weapon, aggravated assault-family violence, aggravated assault with a deadly

weapon, and possession of a firearm during the commission of a felony.  At her

trial from March 6 to 25, 2011, the defense argued that Hamilton had shot

Donaldson in self-defense and that she suffered from battered person syndrome.

See OCGA § 16-3-21 (a), (d).  The defense presented an expert witness who

testified about battered person syndrome; the State cross-examined the expert

but did not present any contrary expert testimony.  The State argued that

---

[3]  Hamilton's testimony about the situation when D'Angelo entered the den was corroborated by D'Angelo's testimony.

6

Hamilton had obtained a gun for the purpose of committing an aggravated assault against Donaldson, that she was the initial aggressor in the fatal altercation, and that she did not suffer from battered person syndrome. The jury acquitted Hamilton of malice murder, but found her guilty of the other charges. The trial court then sentenced her to serve life in prison for felony murder and five consecutive years for the firearm charge; the two aggravated assault verdicts merged with the felony murder count.

On April 27, 2011, Hamilton filed a motion for new trial, which she amended with new counsel on May 19, 2015, raising the general grounds under OCGA §§ 5-5-20 and 5-5-21 and claims of ineffective assistance of trial counsel. After an evidentiary hearing on May 29, 2015, the trial court issued an order on September 3, 2015, granting Hamilton a new trial on the general grounds and ruling that her trial counsel had provided ineffective assistance in several respects. The State appeals the new trial order pursuant to OCGA § 5-7-1 (a) (8). See also OCGA § 5-7-2 (c).

2. As a matter of constitutional due process, the evidence presented at trial and summarized above was, when viewed in the light most favorable to the verdicts, legally sufficient to authorize a rational jury to reject Hamilton's claim

7

of self-defense and find her guilty beyond a reasonable doubt of the crimes for which she was convicted. See <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also <u>Anderson v. State</u>, 296 Ga. 524, 526 (769 SE2d 304) (2015); <u>White v. State</u>, 293 Ga. 523, 523 (753 SE2d 115) (2013). The State asserts that because the evidence was sufficient under the due process standard, the trial court erred in granting a new trial under OCGA §§ 5-5-20 and 5-5-21. That assertion is incorrect.

As this Court has clearly explained,

Even when the evidence is legally sufficient to sustain a conviction [under the <u>Jackson v. Virginia</u> standard], a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror.'" In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless – it is, after all, a discretion that "should be exercised with caution [and] invoked only in exceptional cases in which the evidence preponderates heavily against the verdict" – it nevertheless is, generally speaking, a substantial discretion.

8

White, 293 Ga. at 524 (citations and footnote omitted). An appellate court will not disturb the first grant of a new trial based on the general grounds unless the trial court abused its discretion in granting it and the law and the facts demand the verdict rendered. See State v. Cash, 298 Ga. 90, 95 (779 SE2d 603) (2015). See also OCGA § 5-5-50.

In this case, the trial court explained that after it carefully reviewed the trial transcript and exhibits and "considered the conflicts in the evidence, the credibility of the witnesses, and the weight of their testimony," it had concluded that the jury's guilty verdicts were "decidedly and strongly against the weight of the evidence" and "contrary to the principles of justice and equity." The court therefore exercised its discretion to grant a new trial. Having reviewed the record, we cannot say that this conclusion was an abuse of the trial court's substantial discretion to act as the "thirteenth juror" in the case. See Cash, 298 Ga. at 97; State v. Harris, 292 Ga. 92, 94 (734 SE2d 357) (2012).

3.     In her motion for new trial, Hamilton also asserted that her trial counsel provided ineffective assistance by failing to move for a pretrial determination on the issue of self-defense immunity from prosecution, see OCGA § 16-3-24.2; failing to call two additional witnesses to corroborate

9

Hamilton's claims of abuse by Donaldson; failing to object to the State's improper impeachment of defense witness Angela Whitaker; and failing to object to the State's attempts to elicit irrelevant and prejudicial testimony about Hamilton's past. The trial court ruled that Hamilton's trial counsel was constitutionally ineffective in each of these ways. Although the State argues that the court erred in this respect, we need not decide this issue because these instances of allegedly deficient performance by defense counsel are unlikely to recur if Hamilton is tried again. See Stanbury v. State, Case No. S16A0321, 2016 WL 2946426, at *5 (decided May 23, 2016); Cash, 298 Ga. at 97 n.6.

4. For these reasons, we affirm the trial court's order granting Hamilton a new trial on the general grounds. Because the evidence presented at her first trial was constitutionally sufficient to support the jury's guilty verdicts, the State may elect to retry her on those counts. However the case is resolved, the parties and the trial court should proceed with dispatch, given that Hamilton has already served more than five years in prison.

Judgment affirmed. All the Justices concur.