308 Ga. 116
FINAL COPY

S19A1363. THE STATE v. HAMILTON.

WARREN, Justice.

This case, which involves Marlina Hamilton's indictment for the murder of her ex-husband, Christopher Donaldson, has been appealed to our Court three times. As explained in more detail below, after Hamilton was convicted of felony murder and other crimes in connection with Donaldson's death in 2010, the trial court granted a motion for new trial on the general grounds. The State then brought its first appeal, and this Court affirmed the trial court's order. *State v. Hamilton*, 299 Ga. 667, 671 (791 SE2d 51) (2016) (*Hamilton I*). After the State elected to retry Hamilton, she moved for immunity from criminal prosecution based on self-defense under OCGA § 16-3-24.2. In connection with that motion, Hamilton also requested that the trial court admit into evidence, for the purposes of deciding whether she was immune from prosecution, the transcripts of her jury trial and of her motion for new trial hearing.

The trial court granted that request, over the State's objection, by written order. The State appealed that order under OCGA § 5-7-1 (a) (5) (A), but this Court dismissed that appeal. See *State v. Hamilton*, Case No. S19A0555 (Jan. 22, 2019).

In April 2019, the trial court held a hearing on Hamilton's immunity motion, and, consistent with its earlier order, admitted into evidence the transcripts from Hamilton's first trial and her motion for new trial. Later that month, the trial court entered an order granting Hamilton's motion for immunity from criminal prosecution under OCGA § 16-3-24.2. The State now appeals Hamilton's grant of immunity and argues that the trial court erred by considering Hamilton's immunity motion before retrial; by admitting and relying on the transcripts from Hamilton's first trial and her motion for new trial to decide Hamilton's immunity motion; by granting Hamilton's immunity motion; and by failing to recuse from the case. We hold that the trial court properly considered Hamilton's immunity motion before retrial. We further hold that although the trial court abused its discretion by admitting the

2

transcripts of Hamilton's jury trial and her motion for new trial hearing under OCGA § 24-8-804 (b) (1) ("Rule 804 (b) (1)") without making any determination regarding whether the witnesses who provided the testimony in those transcripts were available for the 2019 immunity hearing, the trial court did not abuse its discretion by considering and admitting that evidence under OCGA § 24-8-807 ("Rule 807"). And because there was evidence to support the trial court's determination that Hamilton was justified in using deadly force to defend herself under OCGA § 16-3-21, we affirm the trial court's order granting Hamilton immunity under OCGA § 16-3-24.2. Finally, we hold that the trial court properly rejected the State's motion to recuse.

1. *Case History.*

(a)  *Background.*

Hamilton and Christopher Donaldson had been in a multi-year, tumultuous relationship — including a marriage and a divorce — before Hamilton killed Donaldson in 2010. On February 23, 2011, a Dougherty County grand jury indicted Hamilton for the malice

3

murder of Donaldson, felony murder based on aggravated assault with a deadly weapon, aggravated assault (family violence), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. A comprehensive summary of the evidence presented at Hamilton's 2011 trial can be found in *Hamilton I*, 299 Ga. at 667-669, but for purposes of this appeal, we summarize the following: The evidence presented at trial included evidence that Donaldson physically abused Hamilton, including instances of severe abuse, over a period of many years. At trial, Hamilton testified on her own behalf and specifically testified that on the night of Donaldson's death, Donaldson was in the midst of attacking Hamilton with his fists in Hamilton's own home when Hamilton grabbed a gun that she kept under a sofa and fatally shot him. The evidence also included Hamilton's earlier statement to police that she shot Donaldson because she "felt like he was going to kill [her] that night."

In March 2011, a jury found Hamilton not guilty of malice murder but guilty of the remaining counts, and the trial court

sentenced Hamilton to life in prison for felony murder with five consecutive years in prison for the firearm charge.[1] Hamilton then filed a motion for a new trial. After an evidentiary hearing, the trial court granted Hamilton's motion on the general grounds, see OCGA §§ 5-5-20; 5-5-21, and also ruled that trial counsel rendered constitutionally ineffective assistance by, among other things, failing to move for a pretrial determination on the issue of immunity from criminal prosecution. The State appealed, and in *Hamilton I*, we affirmed the trial court's grant of a new trial to Hamilton on the general grounds, although we also determined that the evidence presented at Hamilton's trial was constitutionally sufficient to support the jury's verdicts.[2] 299 Ga. at 671.

(b) *Retrial and Motion for Immunity.*

---

[1] The aggravated assault counts were merged for purposes of sentencing.

[2] With respect to the State's challenge to the trial court's ruling on ineffective assistance, we concluded that "we need not decide this issue because these instances of allegedly deficient performance by defense counsel are unlikely to recur if Hamilton is tried again." *Hamilton I*, 299 Ga. at 671.

5

The State sought to retry Hamilton. At that point, Hamilton, through new counsel, filed a motion for immunity from prosecution under OCGA § 16-3-24.2, which provides that "[a] person who uses threats or force in accordance with Code Section 16-3-21 [defense of self or others], 16-3-23 [defense of habitation], 16-3-23.1 [no duty to retreat], or 16-3-24 [defense of property other than habitation] shall be immune from criminal prosecution therefor. . . ." As noted above, Hamilton also requested that the trial court admit into evidence, for the purposes of deciding the immunity issue only, the transcripts of the testimony of the nearly 30 witnesses who testified at her first trial, as well as the transcripts of additional testimony presented at her motion for new trial hearing. The State opposed Hamilton's motion, arguing that the transcripts were not admissible under any of OCGA § 24-8-804 (b)'s hearsay exceptions and that Hamilton was required to elicit "new" live testimony at the hearing on her immunity motion since she was granted a "new" trial.

(c)    *Trial Court Orders.*

6

On June 1, 2018, the trial court entered an order granting Hamilton's "motion to use witnesses' prior sworn testimony to determine if defendant is immune from prosecution pursuant to OCGA § 16-3-24.2." The trial court reached its conclusion by "liberally construing" Rule 804 (b) (1), reasoning that it was not required to "rigidly apply" that rule to require proof of the "unavailability of each witness as a prerequisite for admission of the testimony" because that specific rule of evidence must be read "in harmony with the values set forth in OCGA § 24-1-1," which provides that the "[r]ules of evidence shall be construed to secure fairness in administration, eliminate unjustifiable expense and delay, and promote the growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Along those same lines, it concluded that "strict adherence to OCGA § 24-8-804 (b) (1) would run afoul of each of the objectives of the rules of evidence." It also noted that "[a]lthough the Court will consider the trial transcript, the Court will additionally hear testimony from any additional

7

witness and from witnesses that did testify at trial if the witness has any additional newly discovered information."

In the alternative, the trial court ruled that it could consider the trial transcript under OCGA § 24-8-807, the "residual exception" to the hearsay rule. In so doing, the trial court acknowledged that Rule 804 (b) (1) expressly requires declarants to be unavailable for it to apply and noted that "[u]nlike OCGA § 24-8-804 (b) (1), this code section [Rule 807] does not expressly require that the declarant be unavailable." The State sought an appeal of that order to this Court, which we dismissed for failure to obtain the required certificate of immediate review under OCGA § 5-7-2 (a).

On April 10, 2019, the trial court conducted a hearing on Hamilton's motion for immunity. Hamilton introduced into evidence the transcripts from her 2011 trial and from the hearing on her motion for new trial, without further objection from the State. Both Hamilton and the State relied on the transcripts during the hearing, and neither presented additional testimony or evidence. On April 26, 2019, the trial court entered an order granting Hamilton's

motion for immunity from prosecution. The State timely appealed that ruling to this Court.

2. *It Was Not Procedurally Improper for Hamilton to Move for Immunity From Prosecution Under OCGA § 16-3-24.2 Before a New Trial.*

As an initial matter, the State makes the strange argument that because immunity from criminal prosecution under OCGA § 16-3-24.2 is a pre-trial matter, such immunity is not available to Hamilton because she was already tried and found guilty by a jury, which heard and rejected her claim of self-defense. That argument ignores the critical fact that the trial court granted Hamilton a new trial on the general grounds under OCGA §§ 5-5-20 and 5-5-21. And "[w]hen a new trial has been granted by the court, the case shall be placed on the docket for trial *as though no trial had been had . . . .*" OCGA § 5-5-48 (emphasis supplied); see *Bankhead v. State*, 253 Ga. App. 214, 215 (558 SE2d 407) (2001) ("Where a new trial has been granted, the case stands ready for trial as if there had been no trial. The effect of the grant of a new trial by an appellate court is to require the case to be heard de novo unless specific direction be given

9

in regard thereto.") (quoting *Reagan v. Reagan*, 221 Ga. 173, 174 (143 SE2d 736) (1965)) (citations and punctuation omitted); cf. *Trauth v. State*, 295 Ga. 874, 876 (763 SE2d 854) (2014). When the trial court granted Hamilton's new trial, the jury verdict against her was set aside. As a result, when the State elected to retry Hamilton, she was free to seek immunity from prosecution under OCGA § 16-3-24.2 before any new trial was conducted. The State's meritless contention fails.[3]

3. *The Trial Court Abused its Discretion By Relying on Rule 804 to Admit Prior Transcripts Into Evidence at Hamilton's Immunity Hearing.*

The State contends that the trial court erred in admitting into evidence, under Rule 804 (b) (1), (and over objection)[4] the transcripts

---

[3] In rejecting a similar argument by the State below, the trial court relied on *Hipp v. State*, 293 Ga. 415 (746 SE2d 95) (2013), and the parties argue on appeal about the applicability of that case. *Hipp*, however, concerned the plenary authority of a trial court to reconsider — post-trial but before entry of final judgment and within the same term of court — a pre-trial denial of an immunity motion, and is therefore inapposite to the procedural posture of this case.

[4] OCGA § 24-1-103 (a) provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such

10

from Hamilton's previous jury trial and motion for new trial hearing in considering Hamilton's motion for immunity from prosecution under OCGA § 16-3-24.2.[5] For the reasons explained below, we agree.

*(a) Legal Background.*

OCGA § 16-3-24.2 provides that "[a] person who uses threats or force in accordance with Code Section 16-3-21 [self-defense] . . . shall be immune from criminal prosecution therefor. . . ." "A defendant bears the burden of demonstrating entitlement to immunity from prosecution under OCGA § 16-3-24.2 by a

---

claim of error for appeal." As a result, once the trial court issued the written order rejecting the State's objections and granting Hamilton's request to use the transcripts to determine immunity, the State was not required to renew its objection to the use of the trial and hearing transcripts to preserve that issue on appeal.

[5] As part of this contention, the State asserts that the trial court's admission of the transcripts violated the Confrontation Clause (though the State does not make clear whether it is referring to the Confrontation Clause of the United States Constitution, the Georgia Constitution, or both). Regardless, the plain text of those clauses shows that they apply only to the "accused," U.S. Const. Amend. VI, or to "person[s] charged with an offense against the laws of this state," Ga. Const. of 1983, Art. I, Sec. I, Par. XIV. As such, Confrontation Clause protections are not available for the State to assert. See *Smith v. State*, 284 Ga. 599, 608 (669 SE2d 98) (2008) (recognizing that Confrontation Clause protections "belong[ ] to the defendant").

preponderance of the evidence," and "[o]n review of a trial court's ruling regarding a motion for pretrial immunity, this Court views the evidence in the light most favorable to the ruling, and accepts the trial court's findings of fact and credibility determinations if there is any evidence to support them." *State v. Ogunsuyi*, 301 Ga. 281, 283 (800 SE2d 542) (2017) (citation and punctuation omitted). Here, Hamilton sought to meet her burden under OCGA § 16-3-24.2 by offering transcripts of testimony from her first trial and her motion for new trial.

Our current Evidence Code's hearsay rules, and specifically Rule 804 (b) (1), govern the admissibility of former testimony — which was presented in the form of transcripts in this case. See OCGA § 24-8-804 (b) (1); *Bolling v. State*, 300 Ga. 694, 698 n.4 (797 SE2d 872) (2017); see also, e.g., *United States v. Gabay*, 923 F2d 1536, 1540-1541 (11th Cir. 1991); *United States v. Bizzard*, 674 F2d 1382, 1387 (11th Cir. 1982). That rule provides that under certain circumstances, "[t]estimony given as a witness at another hearing of the same or a different proceeding" "shall not be excluded by the

hearsay rule," but only *if the declarant is unavailable* as a witness." OCGA § 24-8-804 (b) (1) (emphasis supplied).

Georgia Rule 804 (b) (1) is materially identical to Federal Rule of Evidence 804 (b) (1). And when we consider the meaning of a rule in Georgia's current Evidence Code that "is materially identical to a Federal Rule of Evidence," *State v. Almanza,* 304 Ga. 553, 556 (820 SE2d 1) (2018), "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit," for guidance. *Glenn v. State*, 302 Ga. 276, 280 (806 SE2d 564) (2017) (citation and punctuation omitted); see also *Davis v. State*, 299 Ga. 180, 185 (787 SE2d 221) (2016); *Bolling*, 300 Ga. at 698 ("When we consider the meaning of Rule 804, we may consider the decisions of federal appellate courts, particularly the decisions of the United States Supreme Court and the Eleventh Circuit, construing and applying our rule's federal counterpart."). We review a trial court's evidentiary rulings for an abuse of discretion. See *Venturino v. State*, 306 Ga. 391, 393 (830 SE2d 110) (2019).

*(b) Rule 804 Analysis.*

By its plain terms, OCGA § 24-8-804 (b) requires that a declarant be "unavailable" for his or her former testimony to be admissible under subsection (b) (1)'s exception to the hearsay rule. OCGA § 24-8-804 (b) (1) (excluding from the hearsay rule "[t]estimony given [by] witness[es] at another hearing of the same or a different proceeding" "if the declarant is unavailable as a witness").[6] Indeed, the Eleventh Circuit has explained that "'Rule 804 establishes a two-step inquiry. First, a witness must be "unavailable" as that term is defined in section 804 (a).[7] . . . Second,

---

[6] For the hearsay exception under OCGA § 24-8-804 (b) (1) to apply, "the party against whom the testimony is now offered" must also have "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Neither party disputes that aspect of the statute was satisfied here.

[7] Georgia law, much like the Federal Rules of Evidence, statutorily defines "the term 'unavailable as a witness' [to] include[ ] situations in which the declarant:

> (1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;
> (2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
> (3) Testifies to a lack of memory of the subject matter of the

14

the testimony of the unavailable witness must fall within one of the categories of admissible evidence enumerated in section 804 (b).'" *United States v. Acosta*, 769 F2d 721, 722 (11th Cir. 1985) (quoting *United States v. King*, 713 F2d 627, 630 (11th Cir. 1983)); cf. *United States v. Munoz*, 16 F3d 1116, 1121 (11th Cir. 1994) (addressing whether the witness was unavailable before analyzing whether the evidence met the admissibility requirements of Rule 804 (b) (5)); *United States v. Elkins*, 885 F2d 775, 785 n.7 (11th Cir. 1989) (noting, in analyzing the admissibility of a statement under Rule 804 (b) (5), that "[a] preliminary requirement is that the declarant

---

declarant's statement;
(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
(5) Is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance or, in the case of exceptions under paragraph (2), (3), or (4) of subsection (b) of this Code section, the declarant's attendance or testimony, by process or other reasonable means.

A declarant shall not be deemed unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

OCGA § 24-8-804 (a).

be unavailable"). The unavailability of a witness, therefore, is a statutory prerequisite that a proponent of hearsay evidence has the burden of proving, and that the trial court must evaluate, before a witness's former testimony may be admitted under Rule 804 (b) (1). *Acosta*, 769 F2d at 722-723 (under Federal Rule 804, "a witness must be 'unavailable'"; "[t]he burden of proving the unavailability of a witness under Rule 804 (a) rests with the proponent of the hearsay evidence"; and "the determination as to the 'unavailability' of a witness whose prior testimony is sought to be introduced into evidence is also the responsibility of the trial judge") (citation omitted). See also *Bolling*, 300 Ga. at 699 ("[T]he trial court did not abuse its discretion in admitting [a witness's] prior trial testimony [under Rule 804 (b) (1)] *after* concluding that the State made a reasonable effort to locate him" — i.e., after concluding that a witness was "unavailable" under Rule 804 (a) (5)) (emphasis supplied).

In light of these requirements, the trial court's reliance on Rule 804 (b) (1) to admit prior transcripts into evidence was an abuse of

discretion, because the trial court did not make any findings about the availability of the witnesses who testified at Hamilton's trial or at the hearing on her motion for new trial. To the contrary, the trial court found that "hav[ing] to determine that each of the above mentioned witnesses were unavailable before considering their trial testimony . . . does not lead to the discovery of truth." In making that finding, the trial court focused on the general objectives set forth at the beginning of the Evidence Code, such as "the discovery of truth" and "secur[ing] fairness in administration, eliminat[ing] unjustifiable expense and delay, and promot[ing] the growth and development of the law of evidence." OCGA § 24-1-1. But it did so to the exclusion of the specific statutory requirements plainly set forth in OCGA § 24-8-804 (b).

To be sure, Hamilton had the burden of proving that the witnesses from her trial and from the hearing on her motion for new trial were unavailable, *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F3d 1299, 1317 (11th Cir. 2013); *Acosta*, 769 F2d at 723, and she did not meet that burden here. Indeed, Hamilton offered no

evidence about the unavailability of any of the dozens of witnesses (including Hamilton herself) whose testimony was contained in the transcripts she sought to introduce at her immunity hearing; instead, she focused entirely on the reliability and convenience of using the transcripts as compared to re-calling witnesses for live testimony.[8]

But courts cannot ignore the plain text of specific rules of evidence — even when they purport to do so in the name of "secur[ing] fairness in administration" or avoiding "unjustifiable expense and delay."[9] See OCGA § 24-1-1. As applied here, that means that the general purpose of the Evidence Code or the interpretive principles stated in OCGA § 24-1-1 cannot override

---

[8] The record shows that Hamilton made one reference to one witness being "unavailable" when, at the beginning of a May 7, 2018 motion hearing, she announced that a witness who testified for the defense at trial was "unavailable" at that time because he was in jail and had not been transported to the Dougherty County Jail. But Hamilton did not present any evidence to support that assertion, and the trial court made no findings as to that or any other declarant.

[9] It appears from the trial court's order that it was also trying to heed this Court's admonition from *Hamilton I* to "proceed with dispatch" in resolving Hamilton's case. 299 Ga. at 671. But an attempt to act expeditiously, however admirable, does not justify misapplication of the rules of evidence.

OCGA § 24-8-804 (b) (1)'s specific and plain prerequisite that a declarant be "unavailable" for his or her former testimony to be admissible under that exception to Georgia's hearsay rule. Cf. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 524 (109 SCt 1981, 104 LE2d 557) (1989) (noting that Federal Rule of Evidence 403 does not override the specific evidentiary requirements in Federal Rule of Evidence 609 because "[a] general statutory rule usually does not govern unless there is no more specific rule"); *Williams v. State*, 299 Ga. 632, 634 (791 SE2d 55) (2016) ("[A] specific statute will prevail over a general statute, absent any indication of a contrary legislative intent.") (citation and punctuation omitted). Therefore, because the trial court did not find that the witnesses whose testimony was contained in the transcripts Hamilton offered were unavailable, it abused its discretion by admitting those transcripts into evidence under Rule 804 (b) (1). See *Acosta*, 769 F2d at 723 (because proponent of former testimony "failed to carry [his] burden" of proving unavailability, "offer[ing] no evidence that he had requested the witness to testify or that she had refused to do so," proponent

19

"failed to satisfy the first prong of Rule 804, unavailability of the witness"); cf. *United States v. Robinson*, 239 Fed. Appx. 507, 508-509 (11th Cir. 2007) (prior statement of one witness to another was inadmissible under Federal Rule 804 (b) in part because proponent of statement "did not demonstrate that the witnesses were unavailable to testify").

But that conclusion does not end our review. That is because after conducting its Rule 804 (b) (1) analysis, the trial court made an alternate holding under Rule 807, also known as the residual exception to hearsay.[10] We now turn to that ruling.

4. *The Trial Court Did Not Abuse its Discretion in Evaluating the Admissibility of Prior Transcripts Under Rule 807.*

OCGA § 24-8-807 provides:

> A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule,

___

[10] We caution that because "[t]he residual exception applies . . . *only* to 'statement(s) not specifically covered by any law,'" *Blackmon v. State*, 306 Ga. 90, 94 n.3 (829 SE2d 75) (2019) (emphasis supplied), trial courts should consider whether a specific exception to the hearsay rule applies before applying Rule 807. Indeed, Rule 807's residual hearsay exception is designed to be used "'very rarely, and only in exceptional circumstances.'" *Smart v. State*, 299 Ga. 414, 421 (788 SE2d 442) (2016) (quoting *Rivers v. United States*, 777 F3d 1306, 1312 (11th Cir. 2015)).

if the court determines that:

    (1) The statement is offered as evidence of a material fact;

    (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

    (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this Code section unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

OCGA § 24-8-807.[11]

Like Rule 804, Georgia's Rule 807 is based on the Federal Rules of Evidence (in this case Federal Rule 807), so when construing our Rule 807, we "look to decisions of the federal appeals courts construing and applying the Federal Rules, especially the decisions of the Eleventh Circuit." *Jacobs v. State*, 303 Ga. 245, 249 (811 SE2d 372) (2018) (citation and punctuation omitted). We review a trial

---

[11] The residual exception in the federal rules formerly existed as Rules 803 (24) and 804 (b) (5), but in 1997 the contents of those rules were "combined and transferred to a new Rule 807. . . . No change in meaning [was] intended." Fed. R. Evid. 807, Advisory Committee Note.

court's decision to admit hearsay under Rule 807 for an abuse of discretion, considering the totality of the circumstances. *Tanner v. State*, 301 Ga. 852, 856-857 (804 SE2d 377) (2017). We are "particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *State v. Holmes*, 304 Ga. 524, 529 (820 SE2d 26) (2018) (citation and punctuation omitted).

(a) *The Trial Court's Alternate Holding Under Rule 807*

Here, the trial court found that the witness statements contained in the prior transcripts were "not specifically covered by any law" and that Hamilton met the Rule 807 notice requirement. The trial court also found that "it is undisputed that th[e] testimony" contained in the prior transcripts "is trustworthy" and noted that the "statements should be deemed as *the most trustworthy*" because they "were procured under oath and subject to cross-examination, and subject to a prosecution for perjury for being dishonest."

22

(Emphasis supplied.) It found that there was "no doubt the testimony in question was offered in evidence of a material fact." And it found that the testimony was the most probative evidence that could be procured through reasonable means, rhetorically questioning "how much more probative testimony could be solicited than testimony solicited during Hamilton's original trial[?]" and concluding that it would be "entirely unreasonable to subpoena the nearly thirty witnesses to re-testify to the same material." Finally, it found that "the interests of justice will be best served by admission of the prior testimony." After conducting an analysis of each of the Rule 807 requirements, the trial court concluded that "even if the nearly thirty witnesses that testified at Hamilton's trial were indeed available, requiring Hamilton to subpoena each of them to testify again at her immunity hearing, and discarding the eight days of testimony already given during her trial, would clearly be *unreasonable*," and admitted the prior transcripts under Rule 807 on that alternative basis. (Emphasis in original.)

23

(b) *Rule 807 Analysis.*

Unlike Rule 804 (b) (1), Rule 807 does not by its text require a declarant to be unavailable to admit the declarant's statement into evidence. Compare OCGA § 24-8-804 with § 24-8-807. But Rule 807 is not indifferent to availability. Indeed, availability "re-enters the analysis of whether or not to admit statements into evidence . . . because of the requirement that the proponent use reasonable efforts to procure the most probative evidence on the points sought to be proved." *United States v. Mathis*, 559 F2d 294, 299 (5th Cir. 1977).[12] Rule 807 "thus[ ] has a built-in requirement of necessity," id., and its probativeness requirement necessitates, by its plain terms, some determination by the court that the statement at issue

---

[12] We acknowledge that the availability inquiry relevant to a Rule 807 analysis is not identical to the textual requirements for showing unavailability under Rule 804. Under Rule 804, a trial court must make a threshold showing that the statutory definition of "unavailable" in subsection (a) is met for the exceptions of subsection (b) to apply, whereas a Rule 807 analysis necessitates a trial court more broadly considering availability as part of its analysis of whether a statement is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts[.]" OCGA § 24-8-807 (2). In essence, trial courts have somewhat more leeway in assessing availability under Rule 807 than under Rule 804 — but nonetheless must consider availability as part of its Rule 807 analysis.

is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." OCGA § 24-8-807 (2). See *United States v. Parker*, 749 F2d 628, 633 (11th Cir. 1984) (testimony admissible under residual exception where evidence showed, among other things, that the testimony was more probative than any other evidence proponent could have procured through reasonable efforts); cf. *Noble v. Ala. Dept. of Envtl. Mgmt.*, 872 F2d 361, 366 (11th Cir. 1989). And it is that aspect of Rule 807's text that is critical to the trial court's alternate holding in this case.

Having concluded that it was "undisputed" that the transcripts at issue were trustworthy — a finding that many federal courts consider the "lodestar of the residual hearsay exception analysis," 30B Charles Alan Wright, Arthur R. Miller & Jeffrey Bellin, Federal Practice and Procedure § 7063 (2018 ed.) (citation and punctuation omitted) — the trial court focused its Rule 807 analysis on the probativeness of the prior transcripts relative to whether Hamilton could "offer[ ] any other evidence which" she could "produce through

reasonable efforts." And under the unique circumstances presented in this case, we conclude that the trial court did not abuse its discretion when it concluded that it would be "unreasonable" for Hamilton to "subpoena each of" the "nearly thirty witnesses that testified at [her] trial . . . and discard[ ] the eight days of testimony already given during her trial" and admitted the transcripts into evidence under Rule 807.[13] See *United States v. Loalza-Vasquez*, 735 F2d 153, 158 (5th Cir. 1984) (no clear error in admitting hearsay evidence because, considering the reliability and probativeness of the evidence, the appellate court was "unable to see how live testimony . . . could have been more probative"); see also *United States v. Deeb*, 13 F3d 1532, 1541 (11th Cir. 1994) (affirming trial court's admission of former testimony into evidence under the residual exception where the testimony had sufficient

---

[13] We note, however, that the notion that a trial court may aggregate all of the witnesses who testified previously and perform a group analysis under Rule 807 is misguided. Generally speaking, hearsay statements should be analyzed on a declarant-by-declarant basis, assessing which (if any) hearsay exceptions might apply to a given statement based on the facts and circumstances supported by the record.

26

"circumstantial guarantees of trustworthiness").

A number of factors lead us to that conclusion. First, there is no dispute that Hamilton's criminal case was fully litigated over the course of an eight-day trial, and that the same judge who presided over that — and who observed the demeanor of witnesses being examined and cross-examined — also presided over Hamilton's motion for new trial and immunity hearings.[14] Cf. *Mathis*, 559 F2d at 298-299 (reasoning that live testimony is generally favored and considered more probative, at least in part, because the factfinder is able to observe a witness's demeanor, including during cross-examination). Second, the witnesses' prior testimony would have been considered one way or the other at the immunity hearing if they were called to testify, whether that was because a witness was re-subpoenaed and testified in a way that was materially similar to his or her prior testimony, or because a witness was re-subpoenaed and contradicted his or her prior testimony, thus allowing the prior

_____

[14] The State claims that this somehow proves the trial court's bias. But as explained more below in Division 6, that claim is meritless.

27

testimony's admission as a prior inconsistent statement. See generally OCGA §§ 24-6-613, 24-8-801 (d) (1) (A). Third, the trial court accounted for the potential for additional or inconsistent testimony by giving both Hamilton and the State an opportunity to "hear testimony from any additional witnesses and from witnesses that did testify at trial if the witnesses had any additional newly discovered evidence," yet the State declined to present any such witnesses or evidence. Finally, and perhaps most importantly, Hamilton's 2011 trial — where many witnesses recounted the events of the many years leading up to Donaldson's death, as well as the events on the day of his death less than a year before the witnesses testified — was conducted more than *eight years* before the hearing on her motion for immunity was held in 2019. See *Fed. Trade Comm. v. Figgie Intl., Inc.*, 994 F2d 595, 609 (9th Cir. 1993) (concluding that although proponent could bring declarants to court to testify, "such efforts would not be reasonable" and "not likely to be any more reliable than" their hearsay statements) (citing *Dallas County v. Commercial Union Assur. Co.*, 286 F2d 388, 397 (5th Cir.

28

1961) (noting that, under the circumstances, a contemporary report was 'more reliable, more trustworthy, more competent evidence than the testimony of a witness called to the stand fifty-eight years later')). Given this unusual procedural posture, and considering the totality of the circumstances, we cannot say that the trial court abused its discretion by admitting the transcripts from Hamilton's trial and the hearing on her motion for new trial into evidence.

5. *The Trial Court Did Not Err in Granting Hamilton's Motion for Immunity From Prosecution.*

The State also argues that even considering the prior transcripts, the evidence was not legally sufficient for the trial court to grant Hamilton immunity from prosecution. We disagree.

To prevail on her motion for pretrial immunity under OCGA § 16-3-24.2, Hamilton was required to establish a justification defense under OCGA § 16-3-21 by a preponderance of the evidence. *State v. Sutton*, 297 Ga. 222, 222 (773 SE2d 222) (2015). "On appeal of an order granting or denying immunity under OCGA § 16-3-24.2, 'we review the evidence in the light most favorable to the trial court's

ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is *any evidence* to support them.'" Id. (quoting *Hipp v. State*, 293 Ga. 415, 418 (746 SE2d 95) (2013)) (emphasis supplied).

The State specifically argues that Hamilton's own "self-serving," "[un]corroborated," and "inconsistent" statements that "conflict[ed]" with evidence offered by the State were insufficient to support the trial court's grant of immunity, especially considering that the jury heard and rejected her claim of self-defense at Hamilton's initial trial. But the State cites no authority to support this argument, and a trial court is free to consider a defendant's testimony when deciding a motion for immunity from prosecution and to make credibility determinations and factual findings based on all of the evidence before it — findings that this Court will accept so long as they are supported by any evidence. See, e.g., *Ogunsuyi*, 301 Ga. at 285 (affirming trial court's grant of immunity from prosecution based on defendant's testimony, which trial court found credible, and other corroborating evidence presented at her

30

immunity hearing); *Hipp*, 293 Ga. at 415-416, 418 (in same term of court, trial court may revisit previously denied motion for pretrial immunity and grant immunity from prosecution based on defendant's testimony that he acted in self-defense, despite the jury's rejection of defendant's self-defense claim based on other evidence at trial); *State v. Bunn*, 288 Ga. 20, 21-23 (701 SE2d 138) (2010) (evidence that defendant fatally shot a person who was driving toward him, although conflicting with other evidence, supported trial court's ruling that defendant met his burden of showing that by a preponderance of the evidence he was entitled to immunity from prosecution based on defense of self and others).

Here, the trial court correctly noted that Hamilton bore the burden of proving immunity by a preponderance of the evidence and set forth a detailed summary of the relevant evidence. That summary included more than just Hamilton's own statements that Donaldson had physically abused her for years, that he was attacking her at the time she shot him, and that she shot him because she "felt like he was going to kill [her] that night"; it also

included, among other things, the testimony of several witnesses about Donaldson's routine and ongoing physical abuse of Hamilton. Based on that evidence, the trial court found that "Donaldson's threat to use deadly force against Hamilton on the night in question was, in fact, imminent under the circumstances. And Hamilton was justified in defending herself." This enumeration of error therefore fails. See *Sutton*, 297 Ga. at 223-225 (trial court did not err in finding that a preponderance of the evidence showed that the defendant shot his brother-in-law in self-defense, thus entitling defendant to immunity from prosecution, where evidence showed that defendant retrieved his gun from the sofa as his brother-in-law advanced into home of defendant's mother, and defendant was aware of brother-in-law's prior acts of violence).

6. *The State's Recusal Argument Has No Merit.*

The State also argues on appeal that the trial court erred by declining to recuse itself from this case on remand from *Hamilton I*. The State's theory is that the trial court's "disregard for the jury's verdict" by granting a new trial and "the detailed content of the

32

order of the trial court granting a new trial, inclusive of specific references to the trial transcripts," particularly in its analysis of trial counsel's ineffectiveness in failing to seek pretrial immunity — a specific claim raised by Hamilton in her motion for new trial — "has the appearance of being a part of the trial court's 'personal agenda' as to how this trial should have turned out."

But it is not uncommon for a trial judge to preside over the new trial he granted after having presided over the initial trial. See, e.g., *Texas v. McCullough*, 475 U.S. 134 (106 SCt 976, 89 LE2d 104) (1986) (defendant's increased sentence upheld where he was retried by the same judge who presided over first trial and who granted motion for new trial); *Adams v. State*, 287 Ga. 513, 516 (696 SE2d 676) (2010) (affirming under *McCullough* the new sentence imposed by the trial court after a motion for new trial because it was permissible for "the trial court itself [to] order[ ] a new sentencing hearing upon a partial grant of the motion for new trial filed by [the defendant]"); see also *Patel v. State*, 289 Ga. 479, 486 (713 SE2d 381) (2011) (rejecting argument that "because a trial judge presiding in

an action issues a ruling that implicates the merits of the case, that judge must be recused from acting further in the case. . . . Simply because the judge had approved a prior order in a connected case would not show bias or prejudice . . . .") (citation and punctuation omitted). Dissatisfaction with a trial court's decision to grant a new trial does not amount to an "appearance of impropriety" that requires recusal, and the State raises no other legitimate legal grounds warranting the trial court's recusal. We will waste no more time entertaining the State's borderline-frivolous contention — unsupported by evidence or relevant legal citation — that the trial court erred by rejecting the State's request for recusal and reject that contention outright.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2020.

Murder. Dougherty Superior Court. Before Judge Lockette.

*Gregory W. Edwards, District Attorney, Jeremy R. Hager, Harold R. Moroz, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*William J. Godfrey*, for appellee.